22-1247 United States versus Ronquillo. May it please the court, counsel. My name is Deb Roden. I'm an attorney with Woodhouse Roden Ames in Brennan in Cheyenne, Wyoming, and I represent the appellant Richard Ronquillo. In this case, law enforcement had a search warrant for the single family home located at 836 Lindley Court. Did you agree that a search warrant for a house would include things within the cartilage? I do. I think that's a fair assessment. Yes. However, in this case, the detached structure off the alleyway outside of the cartilage did not have a search warrant. How would you define the cartilage so that it excludes the garage? So the garage, the fence line, the garage is outside of the fence line. It's in the alleyway. There's a fence to the front of that garage, or I shouldn't say the front. There's a fence adjoining that garage, but the garage itself is behind the... But isn't the entrance to the garage, other than how you would drive in if it were being operated as a garage, but isn't the door entrance within that fence? I agree that if you came out that door, you would then find yourself in the residence that had the search warrant. I think what's important to know, though, is that there was no search warrant for that building. The government affirmatively conceded it, as well as the defense. They both argued that that building was not subject to the search warrant. Did they concede that, or did they concede that it wasn't specifically named in the search warrant? I can let you know that at the suppression hearing, the government affirmatively stated that we do not believe that structure was included within the search warrant. No, has the government changed its position now? Well, I think the government is in an interesting position because the district court, in my opinion, went rogue and decided that it did cover, the search warrant did cover that structure, and the government then, on appeal, is in the position of attempting to sort of uphold that decision because it's in its favor, but is a different position than what it took below. Well, they found themselves in that position several times before in the past, haven't they, counsel? I'm sure they have, yes. I have never found myself in that position, but I'm sure the government has. The first issue, though, I believe, I believe the government's affirmative admission that it was not governed by the search warrant is the essential fact. The second issue that came before the court was then, even if it's not governed by the search warrant or covered by the search warrant, did law enforcement, under an officer safety exception to the warrant requirement, was that appropriate in this case? Do you do you quarrel with the fact that there is a officer safety exception that allows a search and you simply quarrel with whether it would be applicable here? Correct. I do believe there is an officer safety exception, exigent circumstance exception to the warrant requirement. Yes, I do. For the protective sweep? I don't believe a protective sweep is applicable in this case. Protective sweeps typically cover when you're doing an arrest. It's incident to arrest. This court has stated, and I can't remember the case, but I can find it for you in a moment, that you and those cases haven't gone so far as to allow a protective sweep in the context of a search warrant. It's typically an incident to an arrest warrant. Well, how about then the exigent circumstances? Because the trial court did hold that there was exigent circumstances, but then allowed the They did. I mean, they just said that the exigent circumstances warrant officer safety was the exigent circumstance which allowed entry into the detached structure. Do you have any quarrel with that? I do. Well, then let me hear that. Yes, certainly. So in this context, the Fourth Amendment exception simply doesn't stretch that far. So let me let me remind you that this detached structure law enforcement had a warrant for the home and then immediately blasted into the detached structure, busted down the door, busted down the window, and immediately went in knowing there was no warrant for that structure. Knowing specifically that no court had found probable cause, no court had found a nexus between that building and any criminal activity. So for the officer safety exception to apply, there are two elements set forth in United States versus NAJUR. Let me ask you a question. You just caught me with something. You said there wasn't a nexus between that building and any criminal activity. I mean, generally, for exigent circumstances that relate to officer safety purposes, there aren't going to be, there isn't necessarily going to be criminal activity, is there? The criminal activity is going to be in the place to be searched as part of the warrant, but the place where the exigent circumstances arise, it's not because of criminal activity. It's because of something else. It's because of the possibility of danger to officers. It's because of the exigency. That's correct. And let me just jump ahead to that point. So under that theory, applying officer safety to the context of this case to a structure that does not have a warrant, and in this case, there were two homes to the left and the right of 836 Lindley Court. Those homes, as demonstrated in the government's brief, are much closer to the home that had the warrant than the detached structure off the alleyway. So if we're going to allow officer safety to just allow officers to go into structures that might pose a potential danger, that we might as well bust into the neighbor's house on the left and bust into the neighbor's house on the right. I mean, the difference between that though, is those are presumably not under the same control as outbuildings. Presumably, yes, but I think the fact that there was no warrant for that structure would tell you that also there was, it may have been under the same control, but not necessarily. We will never know what the issuing judge, Judge Swartz, thought in terms of the detached structure. I don't know if it was brought to him and denied, or if the government thought we can't get a search warrant for this building, so we're not even going to try. Only the issuing judge and the government would know that. Would your view be different if there was a covered walkway connecting the garage to the house? A covered walkway from the garage to the house. I still think the house is outside of the curtilage. The house? I'm sorry. I still believe, thank you, the detached structure is outside of the curtilage. Well, it wouldn't be detached under my hypothetical. Oh, you're saying, I see what you're saying. That perhaps might be a different scenario, but that's not the one that we have before us. Trying to decide where you're advocating the line to be drawn. Well, I would tell you that the entirety of the building is outside of the fence line, and this court in United States versus Dunn had an outbuilding that was outside of the fence line and found that it was not within the curtilage. But was the access to that building also outside the fence line? I don't, I think so. I think that's true in Dunn. I think it was further outside the fence line than the detached structure is here. What would you say if there was, instead of a fully enclosed garage with the windows boarded up, if there was a carport back there, just a covered parking structure with a car in it with two people sitting in it. Would the, do you think the police could have approached the car and detained the people during the search? I'm going to say yes, because they can see the people. They know there are people there and can unobtrusively knock, ask them to come, you know, and be subdued or just be under control of the police. I think that's a different scenario than busting into a home or structure. Let's take the same scenario, but take the people away, but you've got a car parked back there in front of that. Can they search the car? Is that your question? No, the question is, does it make a difference then as to the garage? How far can they go? One foot, two feet? You said if you open the door from the garage, you immediately step into the curtilage, right? I think that's correct. Okay, so you've got a car parked right there in front of the door, and I'm just asking, would that change your answer to Judge Carson's question? So you're saying the car is parked in sort of the backyard inside of the fence line? Yeah, it's parked under the canopy that he's talking about. Can they search the car if it's back there? Well, we know they can because that's in the warrant, but the exigent circumstances with the proximity of the car to the garage. With no people in the car? With no people in the car. If it's governed by the warrant, sure. If it's not, no. Still, so you couldn't search the car? Not if it's not governed by the warrant and it's outside of the curtilage. I just want to hear your position. That's my, yes. I'm just seeing the clock. Would you mind addressing the detention of the defendant here? After they found him and they put cuffs on him? You're asking me about the detention after they found him? Yeah. I can let them. You're challenging that. I have not challenged that. Okay. I have simply challenged that the search warrant did not cover the detached structure as conceded and affirmatively stated by the government. And because of that, I am arguing that there was not an officer safety exigent circumstance requiring them to go into that structure. And so are you then saying because they couldn't have gone into the structure, everything that followed after that was wrong, including his detention? Correct. But not because they didn't have the ability to detain him once they found him? I think if he had walked into the curtilage, maybe a different story. It reminds me of the Ron White joke where he gets arrested for being drunk in public. And he said, I didn't want to be drunk in public. I was trying to be drunk in a bar and you drug me into public. It's sort of like that scenario. Had Mr. Ronquillo come out on his own and been in the curtilage? Different story. But he did not come out. He was sleeping in there, passed out quite a bit. And so that makes a different scenario. And I would say to this point, when you have a structure that's not subject to the warrant, it's really akin to, let's say you have an apartment complex and law enforcement has a warrant for apartment A, which But of course, apartment A and B clearly tell the officer in advance that that's two different residences where people are living. That's true. And you're not getting that message conveyed clearly to officers in a garage. Well, the officers should know that the warrant does not cover this detached structure. In fact, prior to executing the warrant, they had a SWAT team meeting and that SWAT team was met with the detective or the  And the government's position has been that it did not cover this structure. So I think we can impute that knowledge to law enforcement as well. So I have a question about the structure. So the boarded up windows seem to make a difference here because I think you would agree if they could have looked in there and seen him, that might change the analysis. It might have and I think at that point they should have, you know, knocked and tried to have him come out just so they can but the windows are boarded up and I have to concede that that, you know, if you're law enforcement, that's a For example in Smith, which had to do with getting up on an airplane wing and looking through the windows of the plane, right? That's a little bit different scenario. But here you have a structure not part of the warrant that you can't see in, no different than an apartment across the hall that you can't see in. I mean, well, we've already discussed why it might be different. So I won't quibble with you about that. But I mean in some ways doesn't that implicate officer safety more that they can't see what's happening in there that somebody could be planning an attack on them and they can't, they can't anticipate it. I do think that gives law enforcement extra pause. But what I would tell you that the test for this would be you view this through the lens of a cautious, prudent, and trained officer when you're analyzing officer safety exception to the Fourth Amendment. And in this case, you also have to look at the manner and scope of the search. Was that reasonable? So in the case of Martin, that suppression was upheld. But the court goes to length to say that the officers didn't just go barreling in to the structure and they neither forced their way in nor drew their weapons. Well, that's the complete opposite of what occurred here in Mr. Ronquillo's case. Those facts cut against the manner and scope within which they then breached the structure. So I'm still a little confused about what Ronquillo is complaining about. I thought he was complaining about being arrested and put in handcuffs. Well, he raised that below. Certainly, they sort of raised the whole gamut of breaching, finding him, detaining him, handcuffing, patting him down, removing the sock. All of that was before the trial court. However, on appeal, I have chosen just to argue that the two initial pieces that if you sort of never come across him, then the rest falls apart as well. I'm kind of interested, counsel, to hear your take on when the district court, contrary to what the stipulation is by the government, that the facts work there and the district court disagrees and determines that the facts are there. What do we do with that as to your argument that we can affirm on any grounds? I believe this was a... Well, so that's a great question, Judge Baldock. So there is case law of the District Court of Kansas regarding stipulations and in the criminal context, which this is, when both parties stipulate, the district court must accept that stipulation unless it's illegal or contrary to public policy. And I would submit to you that neither of those circumstances were present. This was not an illegal stipulation. It was not contrary to public policy. Rather, I would say it supports the Fourth Amendment and the Constitution. And so the district court simply cannot ignore that stipulation and make a decision on its own. It's kind of like a bridge game. A card laid is a card played. They can't take it back once they've stipulated to it. Correct. And it really puts the defense in a tenuous position as well, right? Then you have to not only argue the government's position, but potentially what the judge may be thinking out purely opposite of that. Thank you. I think that's the end of my time. But unless the court has questions, I will take a seat. Thank you, Counsel. Thank you. Good morning, and may it please the court. Jenna Neuscheller, on behalf of the United States. The officers in this case had three valid justifications for breaching the detached garage where they encountered Mr. Ronquillo. Under which they're exigent or protective suite. So there are three separate justifications, Your Honor. The first would be that the garage is located on the cartilage of the property. And under this court's precedence in Earl, a warrant that extends to a residence necessarily extends to the cartilage of that residence. That would be the first justification. So your position is that the court held that it was, the garage was under the, under the warrant? Yes, Your Honor, because the garage was located under all the done factors. It was located on the cartilage of the Lindley Court residence. And this court spoke rather plainly in Earl's that when you have a warrant to search a residence, officers necessarily can also search any outbuildings, sheds, even detached offices as in Earl, that are located on the cartilage of that residence. And that's exactly what happened here. And that's the most straightforward basis for this court to affirm the District Court's decision below. So, did they have a duty to at least knock before they broke in the door? I mean, was there, were there such exigent circumstances that they thought just breaking in the door immediately without attempting to use less abrupt means? And I lost my train of thought, but you get where I'm going with this. Did they give, was there, was there a less intrusive way to check and see if someone was in there?  Sergeant Martinez testified that there was no intrusive way to do that after securing the main Lindley Court residence within one to two minutes. They looked at the garage, which admittedly, they knew there was going to be a detached garage there, but they learned for the first time it was boarded up. They saw that it's just 25 feet from the main residence. They saw it was connected by these concrete pavers suggesting that the occupants of the main residence who were believed to be dangerous narcotics dealers. But all of those conditions existed at the time that the affidavit was was created in this case. Everything you said was already there, plain sight and everything, and yet the the garage was not specifically mentioned in the war. So I would push back on that. I do think in advance, they absolutely knew the facts about the alleged facts about the occupants of the main residence, but there's nothing in the record to suggest that in on the property, in the backyard, having secured that main residence, there's no evidence they knew in advance those windows were going to be boarded up. And Sergeant Martinez testified that as soon as he saw the boarded up windows, there was no way for him to simply peer in the garage to see if it's filled with bicycles or Halloween decorations, or if it's actually if what's inside the garage is something that might pose a danger to his safety. Unlike a apartment number where you have, you know that somebody's living there. Did they have any reason to believe someone was living or was in this garage at the time? And I suppose there could be two reasons somebody could be in the garage. Could be a drug person doing drug activity. That wouldn't be an occupant. That wouldn't make the garage their residence. So it's possible that they would suspect somebody might be in the garage, but did they have any reason to believe someone was living in the garage? No. Sergeant Martinez repeatedly testified that it was only upon breaching the garage and seeing clothing, a bed, and other indicia of residency that they realized it was a separate residence. And the District Court specifically found in its findings of fact that the officers had no basis to believe whether from the existence of a mailbox or a separate, you know, house number out front. They had no indication that this was a different kind of garage. So you started your argument, but we've kind of distracted you, I'm afraid. You said there were three justifications. Just give us the points two and three by title. You may not have time to discuss them all, but at least I want to make sure I have all three. I think the briefs are clear on that, but I just want to hear it from you. Yes, Your Honor. The second justification is the exigent circumstances exception based on officer safety. And then the third justification is also closely related, but that would be a protective sweep of the garage. Again, on the basis of officer safety. I don't, I don't see how protective sweep is any different than exigent circumstances, except the terminology changes whether you're exercising an arrest warrant or a search warrant. They seem to be kissing cousins. I agree with that characterization, Your Honor. I think they are closely related. Let me back you up to the first issue. So would you agree that if there was a fence separating the detached building and the house that it would not have been within the curtilage? It depends. I think it would weaken that analysis. Of course, sort of the central done factor is the notion of the two structures being part of the same enclosure, but I think it would depend how far outside the residence's enclosure your hypothetical detached garage is. Is it a hundred feet outside or is it just an inch outside and that's the way the fence line is? I think that that would impact the analysis. And this is sort of picking up on something Judge Ebel asked you. So thinking about this place, I mean, from what I saw on the pictures, it looks like before the door was broken open and and the plywood was ripped off the window, that a passerby would look at it and maybe think it was abandoned, you know, not something that was used for any kind of occupancy. Does that weaken it? I mean, do you need more indication that someone might be in there before you go busting down the door? In the context of this case, given the layout of the property and the situation the officers were presented with, I don't think so. They were there to execute a search warrant and there's no dispute on either side that that search warrant extended through the backyard of the Lindley Court property just up until perhaps the threshold of the detached garage. And so it would not be reasonable for the, I don't, it was not unreasonable, I should say, for the officers to observe that building completely boarded up, its proximity to an area they were lawfully present in and able to search and envisioned, in fact, searching for a prolonged period of time in order to be thorough. It's reasonable for them to look at that structure, dilapidated though it may be, and determine that they don't need to take the chance and run, sort of roll the dice as to whether there's an armed person inside, particularly given all the information available to them about the occupants of the property writ large. What, what was the evidence that would have alerted the, once they broke into the garage? What evidence alerted the officers to the fact that somebody was living there rather than just somebody having to be there? So Sergeant Martinez testified that it was the existence of a bed. There were some food items on a counter, you know, there was not a toilet or a formal kitchen, but it was the bed, the clothing, and personal effects to that nature, as well as quite frankly, Mr. Ronquillo was sleeping there. Yeah. Does the court have other questions? I don't think so. Thank you counsel. Happy to cede the remainder of my time. The government would ask this court to affirm. Okay. Thank you. The case will be submitted and counselor excused. Thank you both for your excellent arguments.